[Civ. No. 7296. Third Dist. June 3, 1947.]

JUANITA McDONALD et al., Appellants, v. LEONARD GLEN PRICE et al., Respondents.

Honey & Mayall, Jack J. Miller and Miller & Kroloff for Appellants.

Neumiller, Ditz, Beardslee & Sheppard, Hawkins & Hawkins and C. H. Hogan and Dudley W. Sheppard for Respondents.

PEEK, J.—This is an action for damages for wrongful death brought by the wife and minor child of the decedent. The case was tried before a jury which returned a verdict in favor of defendants.

Plaintiffs' sole assignment of error relates to the prejudicial misconduct of defendants' counsel in asking a series of questions over plaintiffs' objections with respect to criminal activities of the decedent some years prior to his death.

The particular matter complained of consisted of the following cross-examination of decedent's wife by defendants' counsel:

"Q. How long had you known your husband before your marriage? A. Three or four years.

"Q. So you knew your husband, then, about back in 1940? A. Yes.

"Q. You knew, didn't you, Mrs. McDonald, that your husband frequently indulged in intoxicants? A. Yes.

"Q. And you knew that he had been arrested on many occasions for that, didn't you? A. Yes.

"Q. Did you know that in April of 1937 he plead guilty to a charge of burglary and served six months in the road camp?"

At this point plaintiffs' counsel objected to the question as incompetent, irrelevant and immaterial, and as prejudicial

misconduct on the part of counsel. After some colloquy between various counsel and the court the objection was overruled and the witness answered "No."

Counsel for defendants, continuing his questioning, then asked:

"Q. Your husband did not tell you that prior to your marriage? A. No.

"Q. Did you know that in May of 1939 he was charged with three counts of petty theft to which he plead guilty?"

The objection of counsel for plaintiffs again was overruled by the court, and again she answered "No."

Nowhere in the record before this court does the truth of these assumed convictions appear. The only mention of them is in the questions asked by defendants' counsel and there they are stated as matters of fact. However, neither proof nor offer of proof of such facts were made by counsel. From all that appears here the statements well might have been entirely a fiction of counsel's imagination. The complete failure to prove such criminal convictions strongly indicates a lack of good faith in asking the questions.

■   While a wide latitude should be given in cross-examinations, counsel in putting questions to the witness should not be allowed to assume facts not in evidence and state as positive assertions facts which if true would be detrimental to the opposing party's case and of such a nature as to inflame and prejudice the minds of the jurors. This is especially true where, as in the present case, there is no proof of the facts asserted. (*People* v. *Fleming,* 166 Cal. 357 [136 P. 291, Ann.Cas. 1915B] ; *People* v. *Wells,* 100 Cal. 459 [34 P. 1078] ; *People* v. *Mullings,* 83 Cal. 138 [23 P. 229, 17 Am.St.Rep. 223] ; *Estate of Martin,* 170 Cal. 657 [151 P. 138].) While the factual situations in the cases cited are not similar to that presented herein, nevertheless the reasoning expressed in those opinions is directly applicable to the instant situation. The inherent vice of the matter lies in the attempt to bring before the jury in a round about way facts which could not be proved and which from all appearances may have been entirely false.

Inasmuch as upon the issues of negligence and contributory negligence the case here was close we cannot say that the questions objected to were considered by the jury merely as bearing upon the issue of damages in accordance with the instruction of the court. As stated in *People* v. *Mullings, supra,* at page 146, to assume that the asking of improper questions which included statements of damaging facts which

could not be proven does not prejudice the opposite party in the minds of lay jurors "is to ignore human experience and the dictates of common sense." It seems apparent that it was the questions and not the answers which defendants' counsel thought important. The purpose of the questions clearly was to keep before the jury the assumption of facts which could not be proven, and thus impress upon them the probability of the existence of the assumed facts upon which the questions were based.

In an action for wrongful death the moral habits of the deceased, such as habitual intemperance, gambling or lack of thrift, have a bearing on the value of his life to his wife and family (*Taylor* v. *Western Pacific R. R. Co.*, 45 Cal. 323; *Barboza* v. *Pacific Portland Cement Co.*, 162 Cal. 36 [120 P. 767]; *Pell* v. *Herbert*, 33 Cal.App. 730 [166 P. 386]), for his habits of sobriety and economy are reflected in his earning capacity and monetary value to his family. Additionally respondents contend that evidence of criminal tendencies on the part of the decedent is admissible to show his standing in the community, earning capacity and value to his family.

However, in the present case the evidence which the form of the questions was designed to elicit could have no bearing upon such issue. It was immaterial whether or not the wife knew of the prior convictions of burglary and theft. The questions were not framed so as to discover the existence of any convictions for crimes but merely to indicate the wife's knowledge of the alleged fact of convictions. The obvious conclusion is, as stated before, the important factor was the type of questions and not the answers.

Assuming but not deciding that if the case in favor of defendants had been very strong a different conclusion might be reached, under the present circumstances prejudice to the plaintiff is so highly probable that we are not justified in assuming its nonexistence or in saying that there has been no miscarriage of justice within the meaning of California Constitution, article VI, section 4½.

The judgment is reversed.

Schottky, J. pro tem., and Thompson, Acting P. J., concurred.

A petition for a rehearing was denied June 28, 1947, and respondents' petition for a hearing by the Supreme Court was denied July 31, 1947. Edmonds, J., and Spence, J., voted for a hearing.