[Civ. No. 19266. First Dist., Div. One. July 25, 1961.]

STANLEY WAYNE EDRINGTON, Appellant, v. WHITEY STONG et al., Defendants; RAYMOND LAWRENCE FOWLER et al., Respondents.

[Civ. No. 19913. First Dist., Div. One. July 25, 1961.]

W. F. TATUM, Respondent, v. RAYMOND LAWRENCE FOWLER et al., Defendants; STANLEY WAYNE EDRINGTON, Appellant.

Belli, Ashe & Gerry for Appellant.

Cooley, Crowley, Gaither, Godward, Castro & Huddleson, Augustus Castro, Charles S. Hoppin, Hoge, Fenton, Jones & Appel and Charles H. Page for Respondents.

HOYT, J. pro tem.*—Appellant, Stanley Wayne Edrington, brought an action for personal injuries and for damages to his truck received in a highway accident on December 14, 1956.

The accident happened about 3 a. m. one-half mile south of San Lucas, California. A lumber truck owned by respondent Stong, and being driven in a southerly direction by respondent Fowler, "jackknifed," crashed through a guard rail, and came to rest, on fire, in an open field. Lumber was scattered over the highway. Shortly thereafter a truck driven and owned by appellant Edrington approached the scene from the north. At the same time, a truck owned by plaintiff and respondent Tatum was approaching from the south. As Edrington rounded a curve, he observed the flames from Fowler's truck ahead of him and to the right. He then observed lumber on the highway ahead, but was unable to stop his truck before hitting the lumber. Meanwhile, the Tatum truck had nearly stopped about 300 feet short of Fowler's blazing truck. Edrington's truck went out of control when it hit the lumber on the highway. It veered into the oncoming traffic lane, continued down the highway for about 200 feet, then struck and took out approximately 80 feet of guard rail before striking Tatum's truck with an impact that demolished both trucks. It came to rest, headed northward, beyond Tatum's truck. After appellant Edrington began to apply his brakes he traveled 100 feet to the lumber, and went about 280 feet further before striking Tatum's truck.

Edrington sued Stong and Fowler; Tatum sued Edrington, Stong, and Fowler. The actions were consolidated for trial. Tatum recovered a judgment against Edrington, Stong and Fowler; Stong and Fowler obtained a verdict against Edrington. This appeal is by Edrington only.

■■ Appellant Edrington urges that the court committed

*Assigned by Chairman of Judicial Council.

error in failing to instruct on res ipsa loquitur. The jury returned a verdict for plaintiff Tatum against defendants Edrington, Fowler and Stong; and for defendants Fowler and Stong, as against Edrington. The jury must have found, therefore, that Edrington, Fowler and Stong were each negligent; that their negligence concurrently caused Tatum's damage; and that Edrington was barred from recovery by his contributory negligence. Under the court's instructions, which the jury must be presumed to have understood and followed, no other explanation of the verdicts is possible. Appellant argues that the refusal of the requested instruction on res ipsa loquitur was prejudicial because, ''if given, they might have led the jury to infer that Fowler was negligent.'' Since the jury did find Fowler negligent, no prejudice can have occurred. Edrington's recovery was barred by the jury's finding of contributory negligence and an additional instruction as to Fowler's negligence could not have altered the result.

When a defense verdict could only have been based on a finding that plaintiff was contributorily negligent, error in instructing on defendants' negligence does not warrant reversal. In *Salvo v. Market Street Ry. Co.*, 116 Cal.App. 339, 345 [2 P.2d 585], the court said: ''The instruction which advised the jury that it was not negligence on the part of the motorman to fail to sound a warning signal when the approach of the car was seen by appellant is not generally a correct statement of the law. But in view of the record which discloses that the jury found both parties negligent and returned their verdict on the basis of appellant's contributory negligence, we cannot say that this instruction was prejudicial.'' It follows that it is unnecessary to decide whether the res ipsa loquitur instructions should have been given.

It is also contended that Stong's counsel was guilty of prejudicial misconduct. In his opening statement, counsel for Stong said that Edrington ''testified under oath in the deposition that he observed it [the flames] a half a mile away and at that time he was only going forty-two miles an hour and that he was bringing his truck down to a stop—that he could certainly have brought his truck to a stop within a half a mile's distance or reduce it [to] such a speed that nothing would have bothered him in stopping when he saw the Haley [Tatum's] truck. To the contrary, that the evidence will show he came at an excessive rate of speed and that he did slide sideways and did lose control of his truck before he saw any lumber.'' The above statement was an error in that Edrington

did not so testify in his deposition, and there was no evidence that he lost control of his truck *before* he saw the lumber. The excessive speed is supported by the physical facts. The truck started to veer to the left and appellant had no control of it from the time it struck the lumber.

Appellant did not at the trial object to these statements, did not request a curative admonition, and did not cite respondent's counsel for misconduct. He may not now on appeal assign them as prejudicial misconduct. ''A party should not be permitted to remain quiet and take the chance of a favorable verdict, and then, if the verdict is unfavorable, raise the objection [of prejudicial misconduct] on appeal.'' (*Aydlott* v. *Key System Transit Co.*, 104 Cal.App. 621, 628 [286 P. 456]. See also *Lee* v. *Hackney*, 110 Cal.App.2d 444, 449 [242 P.2d 933].) Moreover, the court did instruct the jury that the statements of the attorneys are not evidence in the case unless made as admissions or stipulations.

 Appellant testified as a part of his proof of damage, that for some time after the accident he could not drive a truck. Under these circumstances, it was competent to prove that his driver's license was suspended during portions of this time. Evidence admissible for one purpose must be received even if improper for some other purpose. (*Wagner* v. *Atchison etc. Ry. Co.*, 210 Cal. 526, 531 [292 P. 645] ; *Daggett* v. *Atchison T. & S.F. Ry. Co.*, 48 Cal.2d 655, 660-661 [313 P.2d 557] ; *Johnson* v. *Matson Navigation Co.*, 163 Cal.App.2d 336, 338 [329 P.2d 375].)

 In this connection, Edrington testified that he was unable to work from December 1956, to about July 1957, because of his injuries. On cross-examination Edrington admitted that in April 1957, he was not allowed to drive a truck because his license was suspended. Appellant disclaimed knowledge of when or how long it was suspended. He was asked if it had been suspended since September 5, 1956, to which he replied, ''I do not think it had, no.'' The portion of this evidence which relates to a time subsequent to the accident was relevant to the question of why appellant had not returned to work sooner. As to whether the license was suspended before the accident, appellant's answer was in the negative. This should, therefore, have resulted in no prejudice.

 On direct examination Edrington testified that as a result of the accident he was unable to drive a truck until August 1957. In connection with this testimony he was asked

on cross-examination whether he received a traffic citation in April 1957, and whether he was driving a truck at this time. His answer was that he received the citation but was not driving a truck. There was no objection to this question and the answer being in the negative no harm could have resulted.

Edrington testified that he stopped driving in July 1958, because, "I lost a rear end on my truck going to Omaha." Stong's counsel asked immediately after this, "And just ahead of losing your rear end of the truck in July hadn't your license been suspended by the State of California as a negligent operator?" An objection by appellant was sustained to this question. Counsel for appellants recognize the general rule that the injurious effect of a prejudicial question can usually be cured by proper action by the trial court, but points out that this rule does not apply ". . . where the improper remarks, conduct and questions are of such a character and the purpose of their injection so apparent that they could not be erased from the minds of the jury by any form of admonition." In support of this qualification of the rule appellant cites *Mangino* v. *Bonslett,* 109 Cal.App. 205 [292 P. 1006] ; *Keena* v. *United Railroads,* 197 Cal. 148 [239 P. 1061] ; *Squires* v. *Riffe,* 211 Cal. 370 [295 P. 517] ; *McDonald* v. *Price,* 80 Cal. App.2d 150 [181 P.2d 115] ; *Gackstetter* v. *Market Street Ry. Co.,* 130 Cal.App. 316 [20 P.2d 93]. However, in each of the cases cited the conduct was much worse than in the instant case. Respondent was entitled to examine appellant as to whether it was actually the injury to his arm in the accident which kept him from working, or the lack of a driver's license. Respondent should not have added the last four words, "as a negligent operator" to his question. However, objection was sustained promptly, appellant did not answer the question, and the jury was admonished to disregard it. This should have prevented any prejudice.

Respondent Stong's counsel asked Edrington whether his vehicle was insured against collision damage, to which he answered "yes." On direct examination Edrington had testified that he put in a salvage bid on his equipment, and bought it back. He then resold it at a small profit. Since Edrington was suing for property damage to his vehicle, respondents were entitled to show its salvage value to establish the amount of the loss. Counsel's question as to whether Edrington was insured for collision damage was a proper foundation for evidence that Edrington paid his insurance company $950 for

the salvage of his truck. In fact, appellant himself had already put in evidence concerning this insurance.

On appellant's motion for a new trial, the trial court considered the instances of alleged misconduct on the part of respondent and concluded that a new trial should not be granted. ". . . the matter of prejudice was passed on by the trial court in denying a motion for a new trial. Although this conclusion of the trial court is not conclusive on appeal it is entitled to much consideration (*Citti* v. *Bava*, 204 Cal. 136, 140 [266 P. 954]) and his conclusion in the matter should not be disturbed unless it is plainly wrong." (*Jonte* v. *Key System*, 89 Cal.App.2d 654, 659 [201 P.2d 562].)

The judgment is affirmed.

Tobriner, Acting P. J., and Duniway, J., concurred.